UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TONY PEREZ,

          Plaintiff,

          v.                                            Case No. 21-C-142

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

          Defendant.

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Tony Perez filed this action for judicial review of a decision by the Commissioner of Social Security denying his applications for disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff contends that the decision of the administrative law judge (ALJ) is flawed and requires remand for several reasons. For the reasons that follow, the Commissioner's decision will be affirmed.

## BACKGROUND

Plaintiff filed applications for a period of disability and disability insurance benefits and for supplemental security income on July 30, 2019, alleging disability beginning August 25, 2018. R. 271. He listed COPD, depression, insomnia, short-term memory loss, impulse control, medical conditions due to his broken back, explosive personality disorder, and anxiety as the conditions limiting his ability to work. R. 303. After his applications were denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. On August 11, 2020, ALJ Dean Syrjanen held a hearing at which Plaintiff, who was represented by counsel, and a vocational expert (VE) testified. R. 35–59.

At the time of the hearing, Plaintiff was 42 years old and lived alone in his home in Marinette, Wisconsin. R. 37, 40. Plaintiff testified that he completed the fourth grade and did not have additional schooling beyond that. R. 41. With respect to past work, Plaintiff indicated that he worked as a cook or a chef in a variety of restaurants, and that the work required him to be on his feet all day long, lift as much as one-hundred pounds, and, in the case of one position, engage in managerial duties. R. 41–42. He testified that he stopped working because he could no longer stay on his feet or handle the lifting requirements. R. 43. Plaintiff stated that his pain, constant discomfort, and failing memory contributed to his inability to return to work. R. 44. He testified that he could stand for twenty minutes at a time, could sit for thirty to forty minutes at a time, and is comfortable lifting thirty pounds. R. 45. Plaintiff noted that he was able to take care of his own personal and household needs, including activities like grocery shopping, but that his uncle would help him when needed. R. 46–47.

Plaintiff also testified about his mental health and substance abuse issues. He acknowledged that he had been participating in mental health care for depression, anxiety, and ADHD, and that these conditions cause him to get "really angry and really closed." R. 46. He stated that he gets "frustrated real easy," gets "angry and grouchy," and is "not a very nice person to be around." *Id.* Plaintiff indicated that he went through AODA mental health programming in 2019 but that he was still drinking and using drugs. R. 47. He stated that he smoked two or three times a week for pain and drank about once per month. *Id.*

In a sixteen-page decision dated August 27, 2020, the ALJ concluded that Plaintiff was not disabled under the Social Security Act from his alleged onset date of August 25, 2018, through the date of the decision. R. 13–28. In reaching his decision, the ALJ followed the five-step sequential process established by the Social Security Administration (SSA) for determining disability. The

ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019, and had not engaged in substantial gainful activity since August 25, 2018, his alleged onset date. R. 15. The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, depressive disorder, anxiety disorder, and attention deficit hyperactivity disorder. R. 16. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed Plaintiff's residual functional capacity (RFC), finding that Plaintiff could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [H]e can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs. He can occasionally stoop, kneel, crouch, and crawl. He can never be exposed to workplace hazards such as moving mechanical parts and unprotected heights. He is limited to simple, routine, and repetitive tasks. He is limited to low stress work defined as jobs involving only simple decision making and occasional changes in work setting. He is limited to jobs where tasks can be performed independently and involve no more than occasional interaction with supervisors, coworkers, and the public.

R. 18.

The ALJ found that Plaintiff was unable to perform any past relevant work as a chef, cook, or food service manager. R. 26. But considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff was capable of performing other jobs existing in significant numbers in the national economy, including assembler, photocopy machine operator, cleaner, lens inserter, final assembler, and table worker. R. 27. Based on these findings, the ALJ concluded that Plaintiff was not disabled from August 25, 2018, through the date of the decision. R. 28. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner. R. 1.

# LEGAL STANDARD

The burden of proof in social security disability cases is on the claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While a limited burden of demonstrating that other jobs exist in significant numbers in the national economy that the claimant can perform shifts to the SSA at the fifth step in the sequential process, the overall burden remains with the claimant. 20 C.F.R. § 404.1512(f). This only makes sense, given the fact that the vast majority of people under retirement age are capable of performing the essential functions required for some subset of the myriad of jobs that exist in the national economy. It also makes sense because, for many physical and mental impairments, objective evidence cannot distinguish those that render a person incapable of full-time work from those that make such employment merely more difficult. Finally, placing the burden of proof on the claimant makes sense because many people may be inclined to seek the benefits that come with a finding of disability when better paying and somewhat attractive employment is not readily available.

The determination of whether a claimant has met this burden is entrusted to the Commissioner of Social Security. Judicial review of the decisions of the Commissioner, like judicial review of all administrative agencies, is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). But the "substantial evidence" test is not intended to reverse the burden of proof. In other words, a finding that the claimant is not disabled can also follow from a lack of convincing evidence.

Nor does the test require that the Commissioner cite conclusive evidence excluding any possibility that the claimant is unable to work. Such evidence, in the vast majority of cases that

4

go to hearing, is seldom, if ever, available. Instead, the substantial evidence test is intended to ensure that the Commissioner's decision has a reasonable evidentiary basis. *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record).").

The Supreme Court has reaffirmed that, "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229). It means—and means only—"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

The ALJ must provide a "logical bridge" between the evidence and his or her conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). But it is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir.

5

Case 1:21-cv-00142-WCG   Filed 08/30/22   Page 5 of 9   Document 27

2019). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

### A. RFC Assessment

Plaintiff asserts that the ALJ's RFC assessment is not supported by substantial evidence. An RFC is an assessment describing the extent to which an individual's impairments may cause physical or mental limitations or restrictions that could affect his ability to work. SSR 96-8p, 1996 WL 374184, at *2. The RFC represents "the maximum a person can do—despite his limitations—on a 'regular and continuing basis,' which means roughly eight hours a day for five days a week." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting SSR 96-8p). In forming the RFC, an ALJ must review all of the relevant evidence in the record and "consider all limitations that arise from medically determinable impairments." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014).

Plaintiff asserts that the ALJ erred when he deviated from the findings of the state agency consultants without explanation or supporting rationale. In September 2019, Dr. Deborah Pape found that Plaintiff was "able to sustain a minimum of superficial interaction with others in the work environment." R. 152. At the reconsideration level, Dr. Therese Harris noted in February

6

2020 that Plaintiff was able to "interact adequately with the public, manage appropriate interpersonal interactions in the workplace, and accept reasonable supervision." R. 187–88. The ALJ determined that the findings of the state agency psychologists were "generally persuasive." R. 24. He noted that, while the evidence of record generally supports their findings and opinions, their findings as to Plaintiff being "capable of only superficial interaction is somewhat too restrictive." *Id.* The ALJ explained that the evidence shows that Plaintiff is capable of occasional interaction with supervisors, coworkers, and the public. He stated that Plaintiff reported that he is well-bonded and interactive with his family members, sees them regularly, and maintains a generally positive attitude. Plaintiff also testified that he would go to his uncle's house to socialize, have barbecues, and drink together. The ALJ observed that Plaintiff is sufficiently capable of interacting with others and that he is able to attend routine medical appointments and interact with medical providers. He concluded that the evidence shows that Plaintiff is capable of at least occasional interaction with others. *Id.* In forming the RFC, the ALJ determined that Plaintiff could perform light work with "no more than occasional interaction with supervisors, coworkers, and the public," among other limitations. R. 18.

Plaintiff does not dispute this evidence or claim that the ALJ misrepresented the record or ignored entire lines of evidence relating to his ability to interact with others. In this case, the ALJ considered and assessed the findings of the medical sources, including the state agency consultants, in formulating the RFC. Although the ALJ must consider opinions from medical sources in assessing issues such as a claimant's RFC, there is no requirement that the ALJ's RFC assessment track verbatim the medical opinions he considers. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("[A]n ALJ must consider the entire record[;] the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's

7

physicians." (citation omitted)). Indeed, "the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2). The ALJ formulated the RFC based upon all of the medical findings and other evidence in the record. The Court finds no error.

## B. Constitutional Claim

Plaintiff asserts that the adjudication of his claim was constitutionally defective because Section 702 of the Social Security Act, 42 U.S.C. § 902, which limits the President's authority to remove the Commissioner without good cause, violates the separation of powers. Because the removal clause is unconstitutional, Plaintiff claims, former Commissioner Andrew Saul lacked the authority to delegate adjudication of this matter to the ALJ and the Appeals Council.

The Commissioner concedes that § 902(a)(3) violates the separation of powers to the extent that it is construed as limiting the President's authority to remove the Commissioner without cause. Dkt. No. 25 at 7 (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021)). The Commissioner asserts, however, that Plaintiff is not entitled to relief absent a showing of harm caused by the unconstitutional statutory removal restriction.

The Court agrees. The Supreme Court has held that an unconstitutional removal provision does not automatically void all agency action. *See Collins v. Yellen*, 141 S. Ct. 1761, 1788 n.3 (2021). Instead, the unconstitutional provision must cause harm. *Id.* at 1789. To succeed on his assertion, Plaintiff must demonstrate a "causal link between the unconstitutional removal clause" and his alleged injuries, namely the denial of his benefits. *Id.* The Court suggested that harm could be traced to the removal clause where "1) the commissioner played a role in the agency action and 2) the president would have removed the commissioner to prevent the action but-for the removal provision." *Roth v. Kijakazi*, No. 20-C-1077, 2021 WL 6062062, at *5 (W.D. Wis.

8

Dec. 22, 2021) (citing *Collins*, 141 S. Ct. at 1789). Plaintiff has not demonstrated that the Commissioner played any role in deciding his claim or that the President would have intervened to stop the Commissioner from acting but-for the removal provision. *See Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring) ("But given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone . . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference."). Because Plaintiff has not shown a causal connection between the unconstitutional removal clause and the denial of his claim, remand is not warranted on this basis. *See also Robinson v. Kijakazi*, No. 21-C-238, 2022 WL 443923 (E.D. Wis. Feb. 14, 2022).

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** at Green Bay, Wisconsin this 30th day of August, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
